IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 11 |
| LOUIS J. DOMIANO, JR. : | |
| DEBRA DOMIANO a/k/a : | CASE NO. 5-08-bk-51563 RNO |
| ANN D. DOMIANO : | |
| : | |
| Debtors : | |

*************************************************************************

| | |
|---|---|
| FIDELITY DEPOSIT & DISCOUNT : | |
| BANK : | |
| : | |
| Movant : | |
| : | |
| v. : | |
| : | |
| LOUIS J. DOMIANO, JR. : | |
| DEBRA DOMIANO a/k/a : | |
| ANN D. DOMIANO : | |
| : | |
| Respondents : | |

## **Opinion**[1]

This is an individual Chapter 11 proceeding filed by a husband and wife. Two Motions filed by a secured creditor are presently pending. First, a Motion to Convert to Chapter 7 and second, a Motion for Accounting regarding some of the secured creditor's collateral.

For the reasons stated herein, I will convert this matter to a case under Chapter 7 of the Bankruptcy Code. Further, I will dismiss the Motion for Accounting, without prejudice to the secured creditor seeking subsequent relief from the Chapter 7 trustee or another authorized representative of the bankruptcy estate.

---

[1] Drafted with the assistance of Ryan B. White, Esquire, Law Clerk

1

## I. Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A).

## II. Background

This Chapter 11 proceeding was commenced by a voluntary petition filed on June 2, 2008, by Louis J. Domiano, Jr. ("L. Domiano") and his wife, Debra Domiano, a/k/a, Ann D. Domiano ("D. Domiano"). L. Domiano and D. Domiano are sometimes hereinafter jointly referred to as the "Debtors".

On November 8, 2010, several Motions were filed by Fidelity Deposit & Discount Bank ("Fidelity Bank") against the Debtors. First, at Docket No. 468, a motion docketed as Second Motion to Convert Case to Chapter 7 or For Appointment of a Chapter 11 Receiver ("Conversion Motion"). Second, at Docket No. 469, a motion docketed as Fourth Motion for Contempt Citation and Damages and to Compel Auctioning of Remaining Vehicles and Accounting of Proceeds ("Contempt Motion"). Third, at Docket No. 470, a motion docketed as Motion to Compel Accounting or Production of All 51 Vehicles Secured to Fidelity Deposit & Discount Bank, or For Criminal Referral if All 51 Vehicles are Not Accounted For ("Accounting Motion"). Community Bank & Trust Company joined in the Conversion Motion at Docket No. 486. PNC Bank, Successor to National City Bank, joined in the joined Conversion Motion at Docket No. 493.

A hearing was commenced on all three Motions on December 8, 2010. By agreement of the parties, there was a consolidated record concerning all three Motions. During the presentation of its case, Fidelity Bank withdrew, without objection, the Contempt Motion.

2

Testimony was completed on Friday, December 10, 2010, and I took under advisement the Conversion Motion and the Accounting Motion. The Debtors filed a Memorandum of Law on December 7, 2010, to Docket No. 494. Fidelity Bank filed its Reply Brief on December 15, 2010, to Docket No. 501. The Debtors filed a Supplemental Memorandum of Law on December 16, 2010, to Docket No. 503. Fidelity Bank filed its Brief in Reply to Debtors' Supplemental Memorandum on December 22, 2010, to Docket No. 510.

It is noted that at the time of the June, 2008, Chapter 11 filing, the Debtors had two principal business sources of income. First, their individual ownership of three commercial real properties and rental income derived therefrom. Also, L. Domiano is the sole shareholder of a corporation, 1950 Wyoming Avenue Associates, Inc., which corporation is the title owner of a commercial property in Exeter, Pennsylvania. The corporation, 1950 Wyoming Avenue Associates, Inc., is the Chapter 11 debtor in two open cases filed in this Court to Case Nos. 5-08-bk-51652-RNO and 5-10-bk-04788-RNO. The Debtors' secondary primary source of business income at the time of the filing was rentals received from certain motor vehicles.

Two witnesses testified during the consolidated hearing on the Conversion Motion and the Accounting Motion. L. Domiano testified as of cross examination as part of Fidelity Bank's case. Fidelity Bank also offered testimony by Robert Siarniak, Assistant Vice President and Collections Officer, whose general duties include overseeing various aspects of bank loans in collection. L. Domiano also testified as part of the Debtors' case in chief. No expert testimony was offered either by Fidelity Bank or the Debtors. Fidelity Bank offered twenty-five exhibits into evidence; twenty-one of those exhibits were admitted into evidence. The Debtors marked two exhibits for identification but did not move for the admission of either exhibit into evidence.

3

Case 5:08-bk-51563-RNO   Doc 514   Filed 12/28/10   Entered 12/28/10 11:44:53   Desc
Main Document      Page 3 of 19

On December 8, 2010, the Debtors filed a Motion to Dismiss the subject Chapter 11; the Motion will be noticed to creditors pursuant to Federal Rule of Bankruptcy Procedure 2002.

### III. Discussion

#### A. Defenses of Estoppel, Waiver, Collateral Estoppel and Res Judicata

The Debtors maintain that the Conversion Motion and the Accounting Motion are precluded as a matter of law. They filed a Memorandum of Law on December 7, 2010, to that effect. The Debtors orally moved to dismiss the two Motions at the close of Fidelity Bank's case.

Page 10 of the Debtors' pre-hearing Memorandum of Law argues that prior stipulations between Fidelity Bank and the Debtors preclude the subject action. The Debtors cite *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) in support of their position. The *Taylor* case primarily addresses non-party claim preclusion – the Supreme Court of the United States considered the "virtual representation" doctrine as adopted by several circuits. The doctrine holds that non-parties can be bound by a judgment, even though they were not parties to the prior litigation. In *Taylor*, the D. C. Circuit Court held that the appellant was bound by a judgment because his interests had been adequately represented by a party to the proceeding which resulted in the judgment. The Supreme Court found that the necessary predicates to apply the doctrine of "virtual representation" had not been met and, therefore, vacated the judgment of the United States Court of Appeals for the District of Columbia and remanded.

There is general language in *Taylor* which militates against the Debtors' arguments for claim or issue preclusion herein. The Supreme Court noted:

> The preclusive effect of a judgment is defined by claim preclusion

4

> and issue preclusion, which are collectively referred to as "res judicata". Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.*, at 748-749, 121 S.Ct. 1808. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

*Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 2171 (U.S. 2008). There is nothing in this record which evidences a final judgment between Fidelity Bank and the Debtors concerning either the Conversion Motion or the Accounting Motion. Similarly, *In re Deangelis*, 2010 WL 1509111 (Bankr. M.D.Pa. 2010), cited at page 11 in the Debtors' Memorandum, is inapposite. In *Deangelis*, the Bankruptcy Court found that a prior default judgment did not support the application of collateral estoppel because the matter had not been actually litigated.

Page 11 of the Debtors' Memorandum invoked the Rooker Feldman doctrine. That doctrine holds that no inferior federal courts, including a bankruptcy court, should consider a federal claim which is inextricably intertwined with the final judgment of a state court. *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005). I consider this argument to have been abandoned since no evidence was presented concerning the existence of a state court judgment between the Debtors and Fidelity Bank regarding the subject matter of these proceedings.

The crux of the Debtors' preclusion and waiver arguments relate to a stipulation entered

Case 5:08-bk-51563-RNO    Doc 514    Filed 12/28/10    Entered 12/28/10 11:44:53    Desc
Main Document      Page 5 of 19

into between the Debtors and Fidelity Bank. The stipulation, which bears signatures dated December 6, 2009, was approved by Court Order of May 20, 2010, at Docket No. 428 ("Settlement Stipulation").

I believe the language of the Settlement Stipulation shows that it was intended to settle one pending matter between the Debtors and Fidelity Bank.

To interpret the Settlement Stipulation, I generally consider principles of contract law. The Pennsylvania courts have set forth several canons of contract construction. In *Bobali Corp. v. Tampa Co.*, 235 Pa.Super. 1, 5-6, 340 A.2d 485, 488 (Pa.Super. 1975), the court noted:

> In construing the terms of a contract we are guided by well-defined and fundamental canons of construction. Our Supreme Court has adopted the following principles:
>
>> '. . . 'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles.' (Citations omitted.) 'Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from the language. (Citing cases.)" *Percy A. Brown & Co. v. Raub*, 357 Pa. 271 at 287, 54 A.2d 35, 43 (1947) (internal citations omitted).
>
> Also see *Unit Vending Corp. v. Lacas*, 410 Pa. 614, 190 A.2d 298 (1963). Moreover, in ascertaining intent effect must be given to all the provisions of the written contract. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347 (1973). 'In a written contract the intent of the parties is the writing itself and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement.' *R. F. Felte, Inc. v. White*, *supra* at 143, 302 A.2d at 351; *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 205 A.2d 865 (1965). A corollary rule is that '(t)he parties (have) the right to make their own contract, and it is not the function of this Court to rewrite it, *or to give it a construction in conflict with the accepted and plain*

6

> *meaning of the language used.*' *Hagarty v. Wm. Akers, Jr., Co., Inc.*, 342 Pa. 236 at 239, 20 A.2d 317, 319 (1941); *R. F. Felte, Inc. v. White*, *supra*. (Emphasis added).

Generally, a settlement agreement is a contract and is subject to the rules of contract interpretation. *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 79 (3d Cir. 1982); *In re Cendant Corp. Prides Litigation*, 233 F.3d 188, 193 (3d Cir. 2000) (basic contract principles apply to settlement agreements).

The Settlement Stipulation was introduced into evidence as Fidelity Exhibit 4. Page 4 of the Settlement Stipulation specifically references a Motion to Compel Auctioning of Vehicles or For Allowance of Administrative Claim and for Third Contempt of Court Citation ("Motion for Auction"). The final wherefore on page 5 of the Settlement Stipulation provides:

> The Debtors and the Bank ("Parties") desire to amicably settle the Motion for Auction, under and in accordance with the following terms: . . .

Paragraph 6 of the Settlement Stipulation provides that in the event the stipulation was approved, Fidelity Bank would withdraw its Motion for Auction and would not renew prosecution of the Motion ". . . unless there is an uncured default of this Stipulation as set forth below."

I find that the language of the Settlement Stipulation manifests an intention by the parties to resolve one aspect of their ongoing differences. Specifically, the Settlement Stipulation resolved the Motion for Auction. I recognize that the Settlement Stipulation is one of two stipulations which have been entered into between the Debtors and Fidelity Bank. In any event, I conclude that the Settlement Stipulation did not preclude Fidelity Bank from bringing either the Conversion Motion or the Accounting Motion. The Debtors' Motion to Dismiss the Conversion Motion is denied.

B.     **Conversion Motion**

11 U.S.C. § 1112(b)(1)[2]:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

The language in the statute was amended by Congress in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"). The amended statutory language limits the court's discretion to refuse to dismiss or convert a Chapter 11 case once "cause" has been shown. *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D.S.C. 2007); *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 560 (Bankr. M.D.Pa. 2007).

Section 1112(b) lists sixteen illustrative examples of what constitutes "cause" for conversion or dismissal of a Chapter 11 proceeding. The statutory examples of cause are illustrative and non-exclusive. *In re 3 Ram, Inc.*, 343 B.R. 113, 118 (Bankr. E.D.Pa. 2006); *In re Ramreddy, Inc.*, _____ B.R. _____, 2009 WL 3763988, *5 (Bankr. E.D.Pa. 2009); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

C.     **The Movant Has Established Cause for Conversion**

    1.     **Gross Mismanagement of the Estate**

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

A debtor-in-possession is vested with significant powers under the provisions of the Bankruptcy Code. Powers such as – the automatic stay, the exclusive right to propose a plan and the discharge of debts. *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999). As is often the case, those powers come with concomitant responsibilities. Significantly, a debtor-in-possession owes a fiduciary duty to its creditors. *In re G-I Holdings, Inc.*, 385 F.3d 313, 319 (3d Cir. 2004). Further, a debtor-in-possession has a duty to keep the court and its creditors informed about the status and condition of its business. *Petit v. New England Mortg. Services, Inc.*, 182 B.R. 64, 69 (D.Me. 1995); *In re Gateway Access Solutions, Inc.*, supra at 565.

A review of the Monthly Operating Reports ("MORs") filed during the pendency of this case raises serious concerns about whether the Debtors have met their fiduciary responsibilities.

It has been noted that:

> [Monthly operating reports] are the life blood of Chapter 11, enabling creditors to keep tabs on the debtor's post-petition operations.

*In re Kholyavka*, 2008 WL 3887653, *4 (Bankr. E.D.Pa. 2008). Monthly operating reports are in a format designed to allow the U.S. Trustee and creditors to monitor business operations during Chapter 11 and to avoid continued business operations that generate losses and administrative insolvency. *In re Javier Estrada, Inc.*, 2010 WL 817406, *2 (Bankr. S.D.Tex. 2010).

At the time the hearing record was closed, the Debtors had filed MORs through October, 2010. My review of the filed MORs raises concern that the reports have been completed in a cursory, if not casual, fashion.

Failure of a debtor to properly report income and expenses constitutes evidence of "gross mismanagement" under § 1112(b)(4)(B). *In re Halal 4 U LLC*, 2010 WL 3810860, *4 (Bankr.

9

S.D.N.Y. 2010). Gross mismanagement is an enumerated cause for conversion or dismissal of a Chapter 11 proceeding. *Gateway Access Solutions, Inc.*, 374 B.R. 556, 566 (Bankr. M.D.Pa. 2007).

The MORs filed in this case generally contain some handwritten entries and are signed by the Debtors. Significant portions of the MORS, such as the pages headed Status of Postpetition Taxes and Statement of Operations, were typically left blank.

It is noteworthy that the Debtors have not employed an accountant in this Chapter 11 proceeding. Attached to each MOR reviewed is what appears to be a printout of activity on a Wachovia Bank checking account. L. Domiano testified that this account "encompassed multiple businesses". Hr'g Tr. 25, Dec. 9, 2010. He also testified that he had one business bank account and one personal bank account. Hr'g Tr. 26, Dec. 9, 2010.

The U.S. Trustee is charged to ensure that required MORs are timely and properly filed. 28 U.S.C. § 586(a)(3)(D); *In re Mullock*, 404 B.R. 800, 809 (Bankr. E.D.Pa. 2009) (the form and content of the monthly operating reports are controlled by the U.S. Trustee).

L. Domiano testified that he had discussed the Debtors' filed MORs with a Mr. Bender, an employee of the District's U.S. Trustee's Office. L. Domiano indicated that early on in the Chapter 11 case, Mr. Bender had noted some deficiencies on the MORs; L. Domiano implied that these deficiencies had subsequently been corrected. No one from the U.S. Trustee's Office testified during the consolidated hearing.

I note that Docket No. 97 is a Motion to Dismiss filed by the U.S. Trustee on September 9, 2008. The Motion alleged that the Debtors had failed to timely file certain MORs and had failed to provide a specimen check for a new Debtor-in-Possession operating account. The U.S.

10

Trustee's Motion to Dismiss was settled and on October 31, 2008, an Order was entered requiring the Debtors to file revised and compliant MORs within fifteen days. The Order further provided that if the revised MORs were not filed as required, upon certification of default, the Chapter 11 proceeding would be dismissed. A review of the docket does not show any subsequent filings by the U.S. Trustee concerning the Debtors' MORs.

I find that the MORs have been completed in such a summary fashion that creditors are left to guess as to much of the Debtors' operations and financial results. What are the sources of the deposits into the Wachovia account? Are each of the Debtors' various businesses earning a monthly net profit or loss? The MORs have not been completed in a fashion consistent with the Debtors' fiduciary duties.

L. Domiano admitted that in August, 2010, he took the loan value on some personal insurance policies and deposited the funds into the account of the Debtor-in-Possession, 1950 Wyoming Avenue Associates, Inc. He offered as an explanation: "So, it was deposited because the only checking account that I used is 1950 Wyoming Avenue." Hr'g Tr. 16, Dec. 9, 2010.

There is no evidence that the Debtors or 1950 Wyoming Avenue Associates, Inc. sought bankruptcy court approval for this transaction. I find this to be evidence of gross mismanagement.

It is also troubling that many of the MORs include a Schedule of Cash Receipts and Disbursements – with a handwritten subheading "1950 Wyoming Ave. Associates, Inc.". There are handwritten figures which apparently show certain items of income and expense for 1950 Wyoming Avenue Associates, Inc. – a corporate Debtor-in-Possession in two other bankruptcy cases. However, another page in the same MORs headed Schedule of Cash Receipts and

11

Disbursements bears the Debtors' typed names and was routinely filed in blank.  Neither receipts nor disbursements are reported on that page for the Debtors.  I find there is no obvious way for a creditor to discern from the MORs what amount of monthly net income the Debtors are ostensibly earning and reporting.

The September, 2010, MOR contains a page headed "Domiano Checkbook - September 2010".  The entries for September 7, 2010, include "Misc. Deposit $300.00" and "Misc. Withdrawal $300.00"; no further information is provided.

An MOR filed by 1950 Wyoming Avenue Associates, Inc., in Case No. 5-10-bk-04788-RNO, was admitted into evidence.  A page headed "Check Disbursements August 2010" shows an August 23, 2010, cashier's check for $13,700.00 in legal fees to Bresset & Santora.  Attorneys Bresset and Santora represent the Debtors in their individual Chapter 11.  I find that this payment evidences a disregard for corporate and bankruptcy requirements and is additional evidence of gross mismanagement.  The blurring of the financial lines between 1950 Wyoming Avenue Associates, Inc. and the Debtors' personal finances is particularly disturbing because of the fiduciary responsibilities of each of the respective Debtors-in-Possession.

The Debtors' MOR for July, 2010, includes a page headed "Domiano Checkbook - July 2010".  It includes a payment of $1,500.00 to Frank Santomauro, Esquire.  Mr. Santomauro is counsel for Debtor-in-Possession, 1950 Wyoming Avenue Associates, Inc., in Case No. 5-10-bk-04788-RNO.  L. Domiano testified that Attorney Santomauro ". . . had taken care of something personally for myself and Mrs. Domiano."  Hr'g Tr. 52, Dec. 9, 2010.  The docket in the Debtors' case does not reflect court approval of the payment of any professional fees to Attorney Santomauro.  Section 330 generally requires court approval before the payment of such

compensation. I find this payment to be further evidence of gross mismanagement.

Cause has been shown to convert this case due to gross mismanagement of the estate.

> D. **The Debtors Have Not Met Their Burden to Identify "Unusual Circumstances" Such That It Would Be in the Best Interests of Creditors Not to Convert the Case From Chapter 11**

Section 1112(b) utilizes a burden shifting approach in Chapter 11 cases where conversion or dismissal has been requested. Fidelity Bank has shown cause for conversion or dismissal. The burden now shifts to the Debtors to show "unusual circumstances" that establish such relief is not in the best interests of creditors and the estate. § 1112(b)(2); *DCNC North Carolina I, L.L.C. v. Wachovia Bank, N.A.*, 2009 WL 3209728, *4 (E.D.Pa. 2009); *In re Ramreddy, Inc.*, _____ B.R. _____, 2009 WL 3763988, *5 (Bankr. E.D.Pa. 2009).

Generally, unusual circumstances require a showing that there is a reasonable likelihood that a Chapter 11 plan will be confirmed within a reasonable period of time. *In re Prisco Properties, LLC*, 2010 WL 4412095, *5 (Bankr. D.N.J. 2010); *In re 15375 Memorial Corp.*, 2008 WL 2698678, *1 (D.Del. 2007); *In re KC's Pub, LLC*, 428 B.R. 612, 615 (Bankr. M.D.Pa. 2010).

As noted above, the Debtors have not yet filed a plan or disclosure statement – more than two and one half years into the case. L. Domiano testified that he had reviewed a draft disclosure statement and plan. Hr'g Tr. 32, Dec. 10, 2010. No draft documents were offered into evidence. L. Domiano testified that creditors would fair better under the draft plan than through a conversion and Chapter 7 liquidation. Hr'g Tr. 32, Dec. 10, 2010. Again, no appraisals, valuations, projections, claim estimates, or other evidence was offered to support L. Domiano's opinion. This lack of evidentiary support, coupled with L. Domiano's self interest,

13

lend little credence to his opinion.

L. Domiano based much of his hopes for a successful reorganization on two potentialities. First, a litigation effort in state court. Second, a possible sale of the commercial real property owned by 1950 Wyoming Avenue Associates, Inc. I will address these matters in turn.

L. Domiano gave brief and rather cryptic testimony regarding a contingent claim which the Debtors purportedly have in some unspecified state court litigation. Schedule B.21 lists "Contingent claim from settlement proceeds (terms under seal by Order of Court)". Schedule B indicates that the claim is held by the Debtors jointly and the value is scheduled as "unknown".

At the hearing, L. Domiano testified that:

> The contingency has become a reality in the last 30 days. So, it is no longer a contingency, it now becomes part of my plan when I receive the --

Hr'g Tr. 15, Dec. 10, 2010.

Each time counsel for Fidelity Bank sought to interrogate L. Domiano about the particulars of the contingent litigation claim, objections were interposed. Debtors' counsel maintained that the records in the state court litigation were sealed. No documentary evidence concerning the contingent litigation claim was offered – no pleading, no docket, not even an order sealing the record. No particulars were offered concerning the amount of any potential recovery by the Debtors on this claim. I cannot find that the bare existence of an unspecified contingent litigation claim provides a basis for the Debtors to show "unusual circumstances" pursuant to § 1112(b)(2). A debtor's mere hope of prevailing on potential litigation claims is not a sufficient basis to defeat a showing of cause to convert. *In re BH S & B Holdings, LLC*, 439 B.R. 342, 350

14

(Bankr. S.D.N.Y. 2010); *In re FRGR Managing Member, LLC*, 419 B.R. 576, 583 (Bankr. S.D.N.Y. 2009).

L. Domiano also based much of his hope for a reorganization upon the sale of the property owned by 1950 Wyoming Avenue Associates, Inc. He maintained that the approval of the development of a Walmart store for an adjacent property increased the value of the corporate property. Again, no appraisals or expert testimony were offered into evidence. L. Domiano testified that the sole piece of real estate owned by 1950 Wyoming Avenue Associates, Inc. has been listed for sale on two occasions for a total of approximately six months. No listing agreement was offered nor did any realtor testify. The confirmed plan in the corporate case filed to 5-08-bk-51652-RNO generally provides for the sale or refinancing of the corporate property within one year; the amended plan was confirmed on June 10, 2009. It should be noted that 1950 Wyoming Avenue Associates, Inc. filed another Chapter 11 proceeding on June 9, 2010 to Case No. 5-10-bk-4788-RNO. The corporate Debtor entered into a stipulation in that case with the first mortgagee, Community Bank and Trust Company, at Docket No. 59. In that stipulation, the mortgagee agreed, subject to certain terms, to forbear exercising its rights and remedies under its mortgage until August 5, 2011. No written purchase offers or agreements of sale covering the property owned by 1950 Wyoming Avenue Associates, Inc. were offered into evidence.

Further, even if a buyer for the 1950 Wyoming Avenue Associates, Inc. property were found, what would it mean to the success of this case? What amount would a sale likely bring? What amounts would be needed to satisfy corporate obligations, including, without limitation, any liens or tax obligations? What amount, if any, would the Debtors likely net from a sale of the corporate real estate? The Court is left to guess as to the answer to these important

questions. Again, no expert testimony, projections, or other documentary evidence was offered by the Debtors.

The likelihood of a successful reorganization within a reasonable period of time must be shown to be more than a debtor's hopes or best case scenario. *In re Wahlie*, 417 B.R. 8, 12 (Bankr. N.D.Oh. 2009) (courts require a debtor to do more than manifest unsubstantiated hopes for a successful reorganization). A court is obligated to carefully scrutinize a plan to determine whether it offers a reasonable prospect of success and is workable. *In re Prisco Properties, LLC*, 2010 WL 4412095, *6 (Bankr. D.N.J. 2010). Further, the Debtors' December 8, 2010, voluntary motion to dismiss belies L. Domiano's stated belief in the likelihood of a successful reorganization.

I conclude that the Debtors have not met their burden to show unusual circumstances why the Chapter 11 case should not be dismissed or converted.

### E. The Case Should Be Converted Rather Than Dismissed

I have found that Fidelity Bank has established cause under § 1112(b)(1). Further, I have found that the Debtors have not established unusual circumstances under § 1112(b)(2).

The Bankruptcy Code next tasks me to either:

> . . . convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, *whichever is in the best interests of creditors and the estate*, . . .

Section 1112(b)(1) (emphasis added).

The bankruptcy court may use its discretion in deciding whether dismissal or conversion is appropriate given the circumstances of the case. *In re Kholyavka*, 2008 WL 3887653, *5 (Bankr. E.D.Pa. 2008); *In re Johnson*, 2008 WL 696917, *7 (Bankr. E.D.Pa. 2008).

16

I recognize that the extent of the Debtors' real property assets have diminished during the pendency of this Chapter 11. There may not, in fact, be any equity for liquidation and distribution to unsecured creditors. However, the lack of credible valuation testimony, coupled with the Debtors' incomplete financial reporting, leave many unanswered questions as to the results of a hypothetical liquidation. Further, based upon the record presented, I cannot evaluate the Debtors' contingent litigation claim. These factors favor conversion and the appointment of a Chapter 7 trustee. A trustee can expeditiously evaluate the estate, liquidate any non-exempt and unencumbered assets and, hopefully, make a distribution to creditors. I find that allowing for the potential realization of a distribution is in the best interests of creditors.

A second factor counsels conversion rather than dismissal in this case. I need not repeat the noted deficiencies in and questions raised by the Debtors' MORs and their mismanagement. I believe the Debtors' conduct, pre- and post-petition, should be reviewed by a disinterested professional. I find that such a review by a Chapter 7 bankruptcy trustee is in the best interests of creditors.

Schedule F filed herein includes unsecured non-priority claims totaling $482,805.09. Schedule E includes unsecured priority claims totaling $95,989.48. Significant Chapter 11 administrative expense claims have been incurred during the pendency of this case. The Chapter 11 administrative claims will be subordinate to Chapter 7 administrative claims if the case is converted to Chapter 7. § 726(b). The significant amount of the unsecured claims also favors conversion over dismissal.

I will order conversion of this case to a case under Chapter 7 of the Bankruptcy Code.

The Conversion Motion alternatively requests the appointment of a receiver. There is, of

17

course, no provision for the appointment of a receiver in Chapter 11. The Court may appoint a Chapter 11 trustee or examiner pursuant to the provisions of § 1104. I will dismiss as moot the portion of the Conversion Motion which sought the appointment of a receiver.

### F. Accounting Motion

The Accounting Motion is a renewed effort by Fidelity Bank to obtain information concerning fifty-one vehicles which were part of the collateral for the Bank's loans to the Debtors. L. Domiano testified that approximately thirty of the vehicles were sold during these proceedings. There was conflicting testimony regarding whether or not Fidelity Bank had consented to all of the vehicle sales.

I employ the doctrine of judicial restraint in considering the Accounting Motion. The "cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is necessary not to decide more." *PDK Laboratories, Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (C.A.D.C. 2004) (Roberts, J., concurring in part and concurring in judgment); *Morse v. Frederick*, 127 S.Ct. 2618, 2641-42 (U.S. 2007) (Justice Alito concurrence).

Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented. *Manning v. Upjohn Co.*, 862 F.2d 545, 547 (5th Cir. 1989).

Under § 521(a)(4), the Debtors are required to surrender their books and records to the Chapter 7 bankruptcy trustee. Fidelity Bank may be able to obtain the information it seeks from the trustee, either voluntarily or by subsequent motion. I find that it is not necessary to decide the Accounting Motion at this stage and will dismiss it, without prejudice to Fidelity Bank's right to seek similar relief from the Chapter 7 trustee or any other authorized representative of

18

the bankruptcy estate.

**III.    Conclusion**

An Order will be entered consistent with this Opinion denying the Debtors' Motion to Dismiss the Conversion Motion, granting Fidelity Bank's Conversion Motion and dismissing the Accounting Motion without prejudice.

By the Court,

Date: December 28, 2010

Robert N. Opel, II, Bankruptcy Judge

(BI)